UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
GARRICK AVERA,

                Plaintiff,

  -against-                          **MEMORANDUM AND ORDER**

CAROLYN W. COLVIN,               1:15-cv-05999 (FB)
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
---------------------------------------------------x

*Appearances:*
| For the Plaintiff | For the Defendant |
|---|---|
| CHRISTOPHER J. BOWES | ROBERT L. CAPERS |
| Center for Disability Advocacy Rights, Inc. | United States Attorney |
| 100 Lafayette Street, Suite 304 | Eastern District of New York |
| New York, New York 10013 | 271 Cadman Plaza East |
| | Brooklyn, New York 11201 |
| | By: RUKHSANAH L. SINGH |
| |     Assistant United States Attorney |

**BLOCK, Senior District Judge:**

     Garrick Avera ("Avera," "plaintiff," or "claimant") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for

disability and disability insurance benefits under the Social Security Act ("SSA").[1] Both parties move for judgment on the pleadings. For the reason stated below, the case is remanded to the Commissioner for further proceedings consistent with this Memorandum and Order.

I.

A forty-seven year-old resident of Brooklyn, New York, Avera never graduated high school but obtained a general educational degree in 1992. From 1996 through 2012, he labored as a technician and mechanic for various oil and plumbing companies, including United Metro Energy Corporation, Kraus Plumbing and Heating, and Pronto Plumbing and Heating. During a normal eight-hour working day, Avera handled large objects for eight hours, walked and stood for three, stooped and reached for four, crouched for two, and kneeled and climbed for one. In 2012, he earned roughly fourteen dollars per hour.

On July 7, 2012, Avera was found lying on the street with gunshot wounds to his right hip and right ankle. Avera was subsequently hospitalized at Brookdale Hospital ("Hospital"). Over the next twelve days, Avera underwent three surgeries to stabilize his fractured femur with a metal rod and surgical screws. Although these operations appeared to succeed, Avera nevertheless stopped engaging in substantial gainful activity as a result of his injuries.

---

[1] Title II of the SSA provides for the payment of *disability insurance benefits* to those whose disability prevents them from pursuing gainful employment via the Social Security disability insurance ("SSDI") program. 42 U.S.C. § 423. The SSA's sixteenth title provides for the payment of *disability benefits* via the Supplemental Security Income ("SSI") program. *Id.* § 1381. When a person files for disability, he or she typically seeks benefit under both programs. *See Heckler v. Day*, 467 U.S. 104, 106–07 (1984) (explaining programs). Avera did so.

Avera filed an application for disability and disability insurance benefits on July 24, 2012, and listed his onset date as July 7, 2012. Avera's claim was initially denied on November 2, 2012. At Avera's request, a hearing before an Administrative Law Judge ("ALJ") was held on October 3, 2013.

On April 3, 2014, the ALJ held that Avera was not disabled within the meaning of the SSA. Applying the SSA's five-step sequential evaluation process,[2] the ALJ determined that (1) Avera had not engaged in substantial gainful activity since July 7, 2012, the alleged onset date, and (2) the subtrochanteric fracture of his right hip constituted a severe impairment. Nonetheless, the ALJ concluded that this impairment did not meet or medically equal the SSA's requisite level of severity, as set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, so as to trigger Avera's automatic classification as disabled.

The ALJ then determined that Avera had the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a). Namely, the ALJ found that Avera could "lift/carry 10 pounds occasionally, 5 pounds frequently, stand/walk 2 hours and sit 6 hours out of an 8-hour day with appropriate breaks." AR 21. The

---

[1] SSA regulations establish a five-step process for evaluating disability claims. The Commissioner must find that a claimant is disabled if she determines "(1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of disability, . . . (4) that the claimant is not capable of continuing in his prior type of work, [and] (5) there is not another type of work the claimant can do." *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing 20 C.F.R. § 404.1520(b)-(f)). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at the fifth step. *See* 20 C.F.R. § 404.1560(c)(2); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

ALJ also determined that Avera "can occasionally squat, kneel and climb stairs." *Id.* In reaching this conclusion, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as other "opinion evidence." *Id.*

The ALJ thereupon applied this RFC to the remaining step. He there determined that Avera, though unable to perform any past relevant work, could perform other jobs identified in the Medical Vocational Guidelines ("Grid"), 20 C.F.R. § 404, Subpart P, Appendix 2. In particular, in light of Avera's age, education, past relevant work experience, and RFC, the ALJ concluded that plaintiff possessed skills transferable to other occupations with jobs existing in significant numbers in the national economy. The ALJ, however, did not give one example.

The Appeals Council denied Avera's request for review on August 18, 2015, and the ALJ's decision thereby became the Commissioner's final one. Avera has sought timely review. He argues that (1) substantial evidence does not support the ALJ's findings as to the work Avera could perform, which specifically contradicted the opinion of Avera's treating physician, Doctor Rana Suleman ("Suleman"); (2) the ALJ should have obtained the testimony of a vocational expert rather than relying on the Grid; (3) the ALJ failed to secure Avera's complete records from the Hospital and therefore did not properly develop the record; and (4) the Appeals Council improperly discounted post-hearing evidence gathered and tendered by Avera's counsel.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g) (" The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *cited in, e.g.*, *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). If contradictions appear in the record and an ALJ fails to reasonably explain why he or she opted for one interpretation over another, the Commissioner's findings must fall. *See, e.g.*, *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("'[T]he ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion . . . .'"). "[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing *Mongeur*, 722 F.2d at 1038).

The treating physician rule dictates that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). For purposes of this rule, "medical opinions" include "statements from physicians and psychologists and other acceptable medical sources," 20 C.F.R. § 404.1527(a)(2), and can take a variety of forms, *cf. Philpot v. Colvin*, No. 12-CV-291 (MAD/VEB), 2014 WL 1312147, at *19 (N.D.N.Y. Mar. 31, 2014) (noting that the relevant treating physician's opinion had been embodied in a checklist); *Gray v. Astrue*, No. 09-CV-00584, 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011) (same); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (same). If the ALJ does not give a treating physician's opinion controlling weight, he or she must provide "'good reasons' for the weight given to that opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004). "When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in its analysis, but 'cannot reject evidence for no reason or for the wrong reason.'" *Morse v. Astrue*, No. 12-CV-6225-CJS, 2013 WL 3282883, at *4 (W.D.N.Y. June 27, 2013) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2007))). Even though the ALJ must generally afford greater weight to a treating physician's assessment, he or she must apply this same standard to the opinion evidence of non-examining sources. 20 C.F.R. § 416.927(e)(2)(ii).

As his decision explains, the ALJ gave little weight to Suleman's conclusion regarding Avera's disability – that Avera could only perform "less than sedentary" work – based on its purported inconsistency with "the record as [a] whole" and the opinions of Doctors Reginald

E. Manning ("Manning") and Shannon Gearhart ("Gearhart"). AR 22. Suleman and Manning were plaintiff's long-time treating physicians, though the ALJ expressly relied on only one of Manning's reports, dated September 17, 2013. Gearhart, meanwhile, was a consultative physician who submitted her sole report on October 8, 2012. Once the overall record is perused, the ALJ's findings cannot stand for three reasons.

First, while Manning identified plaintiff's symptoms and course of treatment in the report upon which the ALJ relied, Manning did not opine as to either the extent of Avera's current physical and mental limitations or the impact of any recommended treatment. *See* AR 288–90. The ALJ's reliance thus ran afoul of his threshold duty to adequately develop "a full record . . . as to the nature and severity of . . . [a] claimed disability" before deciding the appropriate weight to give the opinion of a treating physician like Manning. *Pabon v. Barnhart*, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003); *see also Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991), *cited in Pabon*, 273 F. Supp. 2d at 514. Such a failure serves as an independent ground for vacating an ALJ's decision. *Moran v. Astrue*, 569 F.3d 108, 114–15 (2d Cir. 2009).

Second, the ALJ ignored and consequently failed to adequately address the vagaries cluttering Gearhart's documentary and testimonial opinions. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). Gearhart referred to plaintiff's "mild restrictions for prolonged sitting and moderate restrictions for squatting, kneeling, climbing," and more in a single examination to which the

7

ALJ gave "[g]reat weight." AR 22–23. Problematically, however, Gearhart defined neither "mild" nor "moderate" and thereby improperly left the meaning of these adjectives to the ALJ's "sheer speculation." *Selian*, 708 F.3d at 421. The ALJ, moreover, proceeded to selectively treat Gearhart's own testimony. For example, even as he granted some of Gearhart's conclusions notable weight for being "more consistent with the record," AR 23, the ALJ gave no precise reason for disregarding this same consultative physician's less favorable conclusion regarding Avera's medical need for a cane, *see id.* Even aside from these substantive issues, an "ALJ[] should not rely heavily on the findings of consultative physicians" such as Gearhart "after a single examination." *Selian*, 708 F.3d at 419.

Finally, the overall record is ambiguous as to what extent, if any, plaintiff's severe impairment has rendered him unfit to perform even sedentary work; it contains contradictions between Suleman's conclusions and other doctors' findings–and within Gearhart's own testimony–that cannot be ignored without "good reason." *Bolden v. Comm'r*, 556 F. Supp. 2d 152, 165 (E.D.N.Y. 2007) (citing *Clark v. Comm'r*, 143 F.3d 115, 118 (2d Cir. 1998)). Despite his awareness of these discrepancies, the ALJ never provided specific and supportable reasons for rejecting Suleman's conclusions or privileging only certain aspects of Gearhart's words. *See, e.g.*, *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988) ("If necessary to resolve the inconsistency [between the opinions of the treating source and other sources], the adjudicator will secure additional evidence and interpretation or explanation from the treating source(s) and/or consulting source(s)."); *Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2012) ("An ALJ's 'failure to follow the procedural requirement of identifying the

reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record.'" (quoting *Rogers v. Comm'r*, 486 F.3d 234, 243 (6th Cir. 2007))).

In conclusion, because he failed to fully develop the record and appropriately weigh the medical opinions, the ALJ erred.

### III.

For the aforementioned reasons, the case is remanded to the Commissioner for further proceedings. On remand, the Commissioner should develop the record as necessary and accord any physician's opinion appropriate weight based on specifically identified and well-supported evidence.[3]

**SO ORDERED**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 3, 2017

---

[3] The Court finds it unnecessary to now consider the remaining issues raised by plaintiff because the ALJ must reconsider the overall record upon remand. *See Selian*, 708 F.3d at 422.